**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| VERSANT FUNDING LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TERAS BREAKBULK OCEAN NAVIGATION ENTERPRISES LLC f/k/a TERAS BBC OCEAN NAVIGATION ENTERPRISES HOUSTON, LLC, TERAS CARGO TRANSPORT (AMERICA), LLC, TERAS CHARTERING, LLC d/b/a TERAS BBC CHARTERING, LLC each a Delaware Limited Liability Company and SONNY JOE SANDERS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

## **COMPLAINT**

Plaintiff, VERSANT FUNDING LLC (hereinafter "Plaintiff" or "Versant"), by and through its undersigned counsel, for its Complaint against Defendant Teras Breakbulk Ocean Navigation Enterprises LLC f/k/a Teras BBC Ocean Navigation Enterprises Houston, LLC, ("Teras BBC"), Teras Cargo Transport (America), LLC ("Teras America") and Teras

COMPLAINT - 1

Klinedinst PC
801 Second Ave., Ste. 1110
Seattle, WA 98104

Chartering, LLC d/b/a Teras BBC Chartering, LLC ("TChart" and together with Teras BBC and Teras America, collectively "Teras") and defendant Sonny Joe Sanders ("Sanders" and together with Teras, the "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is an action (a) to collect the sum of $2,943,581.97 from Teras which sum is due and owing from Teras to Versant pursuant to a certain Factoring Agreement dated as of October 30, 2015 between Teras America and Versant, a certain Factoring Agreement dated as of November 20, 2015 between Teras BBC and Versant and a certain Factoring Agreement dated as of July 21, 2016 between TChart and Versant; (b) to collect the sum of $2,943,581.97 from Sanders, as Guarantor of Teras BBC, Teras America and TChart's collective obligations under the respective Factoring Agreements; and (c) to collect the sum of $1,186,721.63 against Teras due to its fraud.

## THE PARTIES

2. Plaintiff Versant is, and has been at all times relevant herein, a Delaware limited liability company with offices at 2500 N. Military Trail, Suite 465, Boca Raton, Florida. Versant is owned by Argent Capital, LLC ("Argent"), which is a New Jersey Limited Liability Company. Argent has four members: Mark D. Weinberg, a resident of Florida; Alison Weinberg Fahey, a California resident; Samantha Weinberg, a resident of New York; and Jacob Weinberg, a Florida resident.

3. Defendant Teras BBC is a limited liability company duly organized and existing pursuant to the laws of the State of Delaware, with a place of business located at 5358 33rd Avenue, NW, Suite 302, Gig Harbor, Washington 98335.

COMPLAINT - 2

Klinedinst PC
801 Second Ave., Ste. 1110
Seattle, WA 98104

4. Defendant Teras America is a limited liability company duly organized and existing pursuant to the laws of the State of Delaware, with a place of business located at 5358 33rd Avenue, NW, Suite 302, Gig Harbor, Washington 98335.

5. Defendant TChart is a limited liability company duly organized and existing pursuant to the laws of the State of Delaware, with a place of business located at 5358 33rd Avenue, NW, Suite 302, Gig Harbor, Washington 98335.

6. Upon information and belief, Teras America wholly owns Teras BBC and TChart.

7. Upon information and belief, Teras America, LLC wholly owns Teras America.

8. Upon information and belief, Teras Cargo Transport Pte. Ltd ("Teras Pte") owns ninety seven percent (97%) of the shares of Teras America, LLC, and a foreign corporation, Nova Synpac (PVT) Ltd., owns three percent (3%) of the shares of Teras America, LLC.

9. Upon information and belief, Teras Pte. is a Singapore Company with a principal place of business located in Singapore.

10. Upon information and belief, Nova Synpac (PVT) Ltd. is a Pakistani company with a principal place of business located in Pakistan.

11. Upon information and belief, Sonny Joe Sanders owns eighty point one percent (80.1%) of the stock of Teras Pte and another Singapore company, Ezion Holdings Limited, owns nineteen point nine percent (19.9%) of the stock of Teras Pte.

12. Defendant Sanders is an individual residing at 828 Leschi Way, Fox Island, Washington 98333 who executed three (3) Performance Guaranties dated November 2, 2015, November 20, 2015 and July 21, 2016 pursuant to which he guaranteed the obligations of

COMPLAINT - 3

Teras, including the obligations sued upon herein. Upon information and belief, Mr. Sanders is the Chief Executive Officer and Director of Teras Pte and an officer of Teras America.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court over Plaintiff's claims is properly invoked under 28 U.S.C. §1332 as the amount in dispute exceeds $75,000 and the controversy is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

14. Venue is proper within this district pursuant to 28 U.S.C. §1391(b) in that "a substantial part of the events or omissions giving rise to the claim occurred" within this judicial district.

## FACTUAL BACKGROUND

**I. TERAS AND VERSANT ENTER INTO A FACTORING AGREEMENT**

15. Factoring is a type of financing characterized by the purchasing of acceptable accounts receivable by a factor, in this case on a non-recourse, notification basis. Factoring services are most typically sought out by companies without access to more traditional sources of credit to meet cash flow needs. As a result, the capital available to such businesses must often be obtained at higher rates and under stricter terms.

16. Versant provides factoring services to its clients. Versant purchases certain of its clients' approved accounts receivable in exchange for a negotiated amount based upon the length of time it takes to collect each account. Versant is then responsible for collecting the receivables, and the net balance of its collections are then remitted to its clients after any proper deductions taken by the account debtors and the fees and other amounts due to Versant.

17. Upon information and belief, Teras Pte is an owner/operator of project and heavy lift ships specializing in US cargo preference shipping services supporting US manufacturers, the US military and other government agencies.

18. Upon information and belief, Teras Pte conducts all of its business in the United States through Teras America as its agent, or through subsidiaries of Teras America.

19. On or about November 20, 2015, Versant, as purchaser, and Teras BBC, as seller, entered into a certain Factoring Agreement (the "Factoring Agreement"), for an initial term of two (2) months with automatic renewals, whereby Versant would, from time to time, purchase certain accounts receivable of Teras BBC, pursuant to separate purchase and sale agreements to be executed by the parties. Teras BBC was, at all times relevant hereto, in the business of providing charters in the shipping business. A true and correct copy of the Factoring Agreement is attached hereto as Exhibit A.

20. Simultaneous, and in conjunction, with the execution of the Factoring Agreement, Versant and Teras BBC entered into a certain Security Agreement, dated November 20, 2015 (the "Security Agreement"), whereby Teras BBC granted a blanket security interest in and to the assets of Teras BBC including, but not limited to, all accounts as defined in Section 9-106 of the Uniform Commercial Code. The purpose of the Security Agreement and UCC-1 filings pursuant thereto was to secure Versant in the event of a default by Teras BBC under the Factoring Agreement and to provide notice of the existence of Versant's lien. A true and correct copy of the Security Agreement is attached hereto as Exhibit B.

21. In connection with the execution of the Factoring Agreement, defendant Sanders executed a certain Performance Guaranty, dated November 20, 2015, (the "Guaranty") which provides, in part:

> Guarantor hereby irrevocably and unconditionally guarantees (a) the due and punctual performance by the Company of the Representations, (b) the payment (and not merely the collectibility) of any loss, liability, or expense incurred by Versant in the event any of the Representations are untrue in any respect or fail to be performed, and (c) the payment (and not merely the collectibility) of any other obligation owed by the Company to Versant of any nature that arises hereafter under the Factoring Agreement or any Account Agreement or pursuant to any modification or amendment thereof (the "Guaranteed Obligations"). . . If the Company, or any of its successors and assigns, shall fail to perform all or any of the Representations and/or fail to duly and punctually pay the amounts set forth in subdivisions (a), (b), and (c) above, or any of them, Guarantor shall forthwith pay the same on demand.

A true and correct copy of the Performance Guaranty is attached hereto as Exhibit C.

22. Defendants Teras America and TChart each entered into a factoring agreement and a security agreement with Versant on or about July 21, 2016, and October 30, 2015, (respectively Exhibits D & E, collectively with Exhibit A as the "Three Factoring Agreements"), which cross collateralized all obligations of Teras BBC with Teras America and TChart. The July 21, 2016 Factoring Agreement between TChart and Versant specifically provided for the "combined delivery" by TChart "and its sister companies," Teras America and Teras BBC, of "not less than $7,500,000 of Accounts Receivable" during each specified Term Period, as explained further below. As a result of the Three Factoring Agreements, each of the Teras entities became responsible to Versant for any breach by any of its "sister companies" of any obligation owed to Versant.

COMPLAINT - 6

Klinedinst PC
801 Second Ave., Ste. 1110
Seattle, WA 98104

23. In addition, Sanders executed a Performance Guaranty on November 20, 2015 and a third Performance Guarantee on July 21, 2016 guaranteeing the obligations of Teras America and TChart respectively. A copy of the cross collateralization agreements is attached hereto as Exhibit F, and copies of the two additional Sanders Performance Guaranties are attached hereto as Exhibit G.

24. Pursuant to Paragraph 6 of the Factoring Agreement, Teras BBC also agreed to:

> [P]ay or reimburse Versant for all its costs and expenses incurred in connection with the enforcement or preservation of any rights under this Factoring Agreement, the Security Agreement, the Account Agreements and such other documents, and the verification of the Accounts Receivable and the creditworthiness of the Account Debtors, including, without limitation, fees and disbursements of counsel to Versant. . . .

### II. TERAS FRAUDULENTLY INDUCED VERSANT TO ADVANCE $1,050,000 TO PURCHASE AN INVOICE

25. Pursuant to the Factoring Agreement and a purchase and sale agreement dated August 29, 2016 ("PSA," attached hereto as Exhibit H), Versant purchased an account receivable represented by Teras BBC to be due and payable from its customer, Military Sealift Command ("MSC") (a department of the United States Government), to Teras BBC, in the amount of $1,400,000.00 (the "Charter Fee").

26. This account receivable was generated pursuant to a contract between Teras BBC and MSC.

27. Both Teras BBC and the agent for Teras BBC handling the charter with MSC misrepresented to Versant that Teras BBC had earned the amount of the Charter Fee in full upon the commencement of the sailing of the ship (Seattle) from the port of Shualba, Kuwait

COMPLAINT - 7

Klinedinst PC
801 Second Ave., Ste. 1110
Seattle, WA 98104

to Sunny Point, North Carolina. These representations were false, and were known to be false when issued. As Versant later learned, MSC only was required to pay the Charter Fee upon the timely arrival of the ship in Sunny Point, North Carolina.

28. Based upon these false misrepresentations, Versant agreed to purchase the $1,400,000.00 account receivable.

29. Teras had superior knowledge with respect to its misrepresentations regarding when the fee was earned and knew that Versant was relying upon the accuracy of the information provided by Teras. Typically, Versant only purchases a receivable of this size upon the account debtor confirming in a signed writing that the amount reflected on the invoice was earned and the account debtor agreeing to pay Versant directly in full without offset or deduction. However, Versant understood that MSC would not deal with Versant directly due to the nature of MSC's secret military operations, and Teras persuaded Versant to rely upon the accuracy of its representations instead.

30. Pursuant to paragraph 2 of the Factoring Agreement, Versant was required to advance to Teras BBC seventy-five percent (75%) of the face amount of the accounts receivable purchased.

31. On August 29, 2016, Versant wired $1,050,000 to Teras BBC.

32. Upon information and belief, somewhere along the journey from Kuwait to Sunny Point, North Carolina, the Seattle broke down and as a result of the failure of the Seattle to arrive in a timely fashion in Sunny Point, North Carolina, the contract was cancelled and no portion of the Charter Fee was paid.

33. Teras did not disclose to Versant that there was a mechanical failure with the Seattle until October 31, 2016.

COMPLAINT - 8

34. To date, Teras has not repaid the $1,050,000 to Versant.

35. The PSA contained a Fee and Reimbursements schedule which provided a fee, described as a discount, to be earned by Versant for factoring the invoice. Versant's fee equaled a percentage of the amount of the invoice and increased based upon the length of time that the invoice remained outstanding. Where, as was the case here, the invoice was not collected for more than ninety days, Versant's fee equaled fifteen percent (15%) of the $1,400,000 invoice amount, or two hundred and ten thousand dollars ($210,000)("Factoring Fee").

36. Accordingly, Teras BBC owes to Versant, arising out of the purchase of the invoice representing the Charter Fee, the amount of the $1,050,000.00 advance plus the Factoring Fee, and another $1,721.63 in miscellaneous expenses totaling $1,261,721.63.

37. On or about November 29, 2016, MSC did pay seventy-five thousand dollars ($75,000) to Teras for services that Teras had performed on an entirely unrelated, prior contract. However, as Teras had assigned to Versant the proceeds of the account in which the seventy-five thousand dollar payment was deposited, Versant received those proceeds.

38. Accordingly, the net amount owed to Versant just from the Charter Fee is $1,186,721.63.

### III. VERSANT IS ENTITLED TO RECOVER "NO DELIVERY FEES" FROM TERAS

39. Teras also owes "No Delivery Fees" to Versant in the amount of $1,757,259.34 pursuant to Paragraph 9 of the Factoring Agreement.

40. The "No Delivery Fee" is designed to replicate the minimum fee Versant was expecting to earn, and the minimum fee that Teras agreed to pay, for the delivery of the

minimum amount of accounts receivable due under the agreement by taking into consideration Teras' minimum commitment to sell accounts receivable and the actual performance of the client's accounts receivable during the relevant period.

41. Specifically, pursuant to Paragraph 9 of the Factoring Agreement, Teras agreed (a) to deliver to Versant pursuant to the Factoring Agreement not less than $7,500,000.00 per sixty (60) day period of approved accounts receivable and (b) that if Teras failed to deliver at least that amount of approved accounts receivable, Versant would be entitled to a "No Delivery Fee," as defined in the Factoring Agreement.

42. Paragraph 9 of the Factoring Agreement states in relevant part:

> The fee to be earned by Versant for the Purchase of the Accounts Receivable from Seller, as set forth in the Fee and Reimbursements Schedule attached to the Account Agreements (the "Fee"), has been established after negotiation between the parties based upon the combined delivery by Seller and its sister company, Teras Cargo Transport (America), LLC, of not less than $7,500,000.00 of approved Accounts Receivable (the "Bi-Monthly Base Sales Amount") to Versant during each 60 day period (a "Term Period") of the Scheduled Term or Rescheduled Term, as applicable. Seller expressly acknowledges that Versant has agreed to the Fee in reliance upon Seller's agreement during each Term Period to deliver at least the Bi-Monthly Base Sales Amount and that Versant would have required an increased Fee in the event a lesser volume of approved Accounts Receivable had been agreed to in any Term Period.

43. Paragraph 9 also contains a formula by which the "No Delivery Fee" shall be computed in the event that Teras failed to satisfy the Bi-Monthly Base Sales Amount during each term period.

44. The "No Delivery Fee" provision was intended to compensate Versant for committing its financial and personnel resources to the purchase of at least the minimum

COMPLAINT - 10

amount of receivables agreed to by Teras, apportioning the staff to service the account, and ensuring the availability of funds.

45. In the case of Teras, this was no small commitment given that Versant was committing to Teras to purchase and to expeditiously service and collect upon, at a minimum, $7.5 million of approved accounts receivable per Term Period for which the Factoring Agreement remained in effect.

46. Teras extensively negotiated the "No Delivery Fee" with Versant.

47. Marc G. Marling ("Marling"), a licensed attorney who then had served as the President of Teras America and as the Inside Director of Teras BBC, principally negotiated the "No Delivery Fee" provision with Versant.

48. When negotiating the "No Delivery Fee" provision, Marling consulted with Teras's in-house general counsel, who also reviewed the agreements.

49. As a sophisticated party, Teras requested that Versant modify the terms of the "No Delivery Fee" provision. Specifically, Teras requested that the Factoring Agreement provide for a Term Period of sixty days, which was much shorter than the typical timeframe contained in Versant's other factoring agreements. Teras also advised that the minimal amount of Accounts Receivable to be delivered during each Term Period should be in the amount of $7,500,000. Thus, Teras, through sophisticated lawyers, negotiated the terms by which Versant was obligated to provide financing to Teras.

50. Paragraph 8 of the Factoring Agreement provides that the Factoring Agreement automatically renews from year to year unless Teras BBC delivers written notice of cancellation to Versant. No such notice was received and thus the Factoring Agreement has renewed as provided for in the Factoring Agreement.

51. Teras has ceased and failed to deliver the minimum bi-monthly amount of approved accounts receivable invoices to Versant in each of the sixty (60) day periods except one, and is thus obligated to pay a "No Delivery Fee" as provided under the Factoring Agreement, as follows:

|  | **Actual Receivables Sold** | **Shortfall** | **Minimum Monthly** | **Actual Fees Paid** | **Shortfall Fees** |
|---|---|---|---|---|---|
| 11/15 -12/15 | $5,153,400 | $2,346,600 | $7,500,000 | $248,435 | $113,125 |
| 1/16 – 2/16 | $2,155,404 | $5,344,595 | $7,500,000 | $52,990 | $131,396 |
| 3/16 – 4/16 | $8,240,033 | ($740,033) | $7,500,000 |  |  |
| 5/16 -6/16 | $1,915,303 | $5,584,696 | $7,500,000 | $77,020 | $224,577 |
| 7/16 – 8/16 | $4,331,401 | $3,168,598 | $7,500,000 | $335,971 | $245,776 |
| 9/16 – 10/16 | $870,000 | $6,630,000 | $7,500,000 | $23,229 | $177,021 |
| 11/16- 12/16 | 0 | $7,500,000 | $7,500,000 | * | $432,681 |
| 1/17 – 2/17 | 0 | $7,500,000 | $7,500,000 | * | $432,681 |
| **TOTAL** | $22,665,543 | $37,334.456 | $60,000 | $301,426 | $1,757,259 |

*based upon average discount rate over course of relationship where no accounts receivable sold in a period.

52. Upon information and belief, Teras made the tactical decision not to terminate the Factoring Agreement before November 2016 as part of a desperate effort to forestall Versant from taking action with respect to the Charter Fee. On October 31, 2016, Teras first disclosed to Versant that there was a mechanical failure with the Seattle, even though, upon information and belief, Teras knew long before that date that Teras would not earn the Charter Fee. Subsequently, Teras misrepresented to Versant that Teras would reimburse to Versant the amount advanced by it, along with its factoring fee, through insurance proceeds. Yet, Versant later learned from a third-party that Teras had surrendered ownership of the Seattle involuntarily to a third-party, and that no insurance proceeds would be available to Teras. Similarly, Teras also assured Versant that Teras would make up the Charter Fee to Versant on the next charter, without disclosing the loss of the Seattle.

53. Pursuant to the terms of each of the Three Factoring Agreements, Teras is contractually obligated to pay to Versant the agreed-upon fees for each of such periods in which a shortfall occurred as well as for the remainder of the term of the Three Factoring Agreements. The total amount of which is due, unpaid and owing in the amount of $1,757,259.34.

**FIRST COUNT**
**VERSANT AGAINST TERAS**
**(Breach of Contract)**

54. Versant repeats and realleges each and every allegation set forth above as if set forth at length herein.

55. Teras breached the Factoring Agreement and the PSA relating to the Charter Fee.

56. Specifically, Paragraph 2 of the PSA, titled Seller's Representations, states that the "Seller represents, warrants and covenants to Versant that:

> (b) Each Account Receivable is for the amount stated on Schedule A and is/are due and payable in accordance with its/their terms and there are no set-offs, deductions, discounts, reductions, disputes, contingencies or counterclaims against Seller on any of the Accounts Receivable (collectively, a "Chargeback").
>
> (c) The full amount of the Accounts Receivable is current and presently due and owing to Seller, payment is not contingent upon fulfillment of any other obligation at any time. Furthermore, the prices and terms of shipment conform in all material respects to the terms of any related purchase order or agreement with the Account Debtor."

57. Teras breached these Representations with respect to the Charter Fee by misrepresenting that Teras had earned the fee at the time that the Seattle set sail, and that

COMPLAINT - 13

Teras's right to collect the fee was not contingent upon another event, such as timely delivering of the ship to North Carolina.

58. Further, paragraph 3 of the PSA provides that Versant can seek recourse against Teras for the Advance Amount if any of the representations set forth in paragraph 2 were false, or if there were a reduction in the amount paid on an Account Receivable due to a performance defense.

59. Accordingly, as set forth above, Teras owes to Versant, arising out of the Charter Fee, contractual fees, advances, expenses and obligations in the amount of $1,186,721.63

60. Further, as set forth above, Teras failed to deliver the minimum bi-monthly amount of approved accounts receivable invoices to Versant in each of the sixty (60) day periods except one, as required by the terms of each of the Three Factoring Agreements. Consequently, Teras is liable to Versant in the additional amount of $1,757,259.34.

61. As a direct result of (a) Teras's obligations under the Three Factoring Agreements to deliver a minimum amount of Accounts Receivable and (b) breach of certain representations set forth in the Purchase and Sale Agreement, Versant has been damaged in the amount of $2,943,581.97, plus any and all legal fees and other costs of collection, along with prejudgment interest.

## SECOND COUNT
## VERSANT AGAINST SANDERS
### (Breach of Performance Guarantees)

62. Versant repeats and realleges each and every allegation set forth above as if set forth at length herein.

63. Defendant Sanders is obligated, pursuant to three separate Performance Guaranties, to make any payments to Versant which defendant Teras BBC, Teras America or TChart is obligated, but fails, to pay.

64. On December 29, 2016, Versant demanded that Sanders, pursuant to his Performance Guarantees, pay to Versant the amount of $2,943,581.97, plus any and all legal fees and other costs of collection, along with prejudgment interest. Versant reiterated in multiple other demands with Sanders' counsel that Sanders pay to Versant the $2,943,581.97 that Teras owes to Versant.

65. Sanders has refused to make any payments to Versant.

66. Due to Sanders' breach of his Performance Guaranties, Versant has been damaged in the amount of $2,943,581.97, plus any and all legal fees and other costs of collection, along with prejudgment interest.

## THIRD COUNT
## VERSANT AGAINST TERAS
### (Fraud)

67. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth herein.

68. Teras fraudulently induced Versant to purchase the Charter Fee invoice.

69. Teras knowingly made false affirmative misrepresentations and intentional omissions of material fact to induce Versant to purchase the Charter Fee invoice.

70. Teras had a duty to disclose the material facts concealed from Versant because Teras: i) had superior knowledge with respect to the representations and ii) knew that their representations to Versant were materially misleading absent the omitted information. Teras

also knew that Versant would not and could not reach out to the Account Debtor (MSC) due to the top secret character of their relationship.

71. Teras represented to Versant that the full amount of $1,400,000.00 was due and owing by MSC to Teras upon the commencement of the sailing of the Seattle from Kuwait to North Carolina when Teras knew that if the Seattle did not arrive in Sunny Point, North Carolina by a date certain that no portion of the Charter Fee would be paid.

72. Each of the misrepresentations was made by employees and/or agents of each the Teras entities.

73. Teras knew each of the misrepresentations to be false when made.

74. Teras made material misrepresentations and omissions of facts to Versant which were reckless as to their veracity, were made with gross disregard as Versant's reliance upon them, and Versant did justifiably rely upon them.

75. Versant reasonably relied on these misrepresentations and omissions in purchasing the Charter Fee invoice.

76. By reason of the above, Versant is entitled to an award of compensatory damages in an amount to be determined at trial.

**WHEREFORE**, Versant demands judgment be entered against defendants Teras BBC, Teras America, TChart and Sanders, as follows:

A. For compensatory damages in an amount to be determined at trial;

B. For punitive damages on the Third Count in an amount to be determined at trial;

C. For prejudgment interest at the rate of 12% per year pursuant to RCW 19.52.010;

D.   For costs of suit and attorneys' fees pursuant to the Factoring Agreement and Guaranties; and

E.   For such other relief as the Court may deem just and equitable.

DATED:  April 14, 2017

KLINEDINST PC

By: *s/ Gregor A. Hensrude*
    Gregor A. Hensrude, WSBA #45918

By: *s/ Anthony C. Soldato*
    Anthony C. Soldato, WSBA #46206

    801 Second Ave., Ste. 1110
    Seattle, WA  98104
    Tel: (206) 682-7701
    Fax: (206) 682-7449
    Email:   ghensrude@klinedinstlaw.com
             asoldato@klinedinstlaw.com

    -and-

KAGEN & CASPERSEN PLLC

By: *s/ Russell L. Bogart*
    Russell L. Bogart, *pro hac vice pending*
    900 Third Ave., 17th Floor
    New York, NY  10022
    Tel: (212) 880-2045
    Fax: (212) 646-7879
    Email: rbogart@kagencaspersen.com

Attorneys for Plaintiff VERSANT FUNDING LLC

| EXHIBIT | DESCRIPTION |
|---|---|
| A | November 20, 2015 Factoring Agreement pursuant to Versant as purchaser, and Teras BBC, as seller |
| B | November 20, 2015 Security Agreement between Teras and Versant |
| C | November 20, 2015 Performance Guaranty between Versant and Sanders |
| D | July 21, 2016 Factoring Agreement between Versant and TChart and July 21, 2016 Security Agreement between Versant and TChart |
| E | October 30, 2015 Factoring Agreement between Versant and Teras America and October 30, 2015 Security Agreement between Versant and Teras America. |
| F | Cross Collateralization Agreements |
| G | Additional Sanders Performance Guarantees |
| H | August 29, 2016 Purchase and Sale Agreement |

16945002v1