UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

VERSANT FUNDING LLC, a Delaware
Limited Liability Company,

    Plaintiff,

v.

TERAS BREAKBULK OCEAN
NAVIGATION ENTERPRISES, LLC f/k/a
TERAS BBC OCEAN NAVIGATION
ENTERPRISES HOUSTON, LLC;
TERAS CARGO TRANSPORT (AMERICA),
LLC A DELAWARE LIMITED LIABILITY
COMPANY; TERAS CHARTERING, LLC A
DELAWARE LIMITED LIABILITY
COMPANY d/b/a TERAS BBC
CHARTERING, LLC; AND
SONNY JOE SANDERS

    Defendants.

Case No. 17-cv-81140-WPD

**PLAINTIFF/JUDGMENT CREDITOR'S MOTION FOR THE COMMENCEMENT OF
PROCEEDINGS SUPPLEMENTARY TO EXECUTION AND FOR
THE ENTRY OF AN ORDER FOR IMPLEADER OF
<u>THIRD-PARTY DEFENDANTS IN AID OF EXECUTION</u>**

Pursuant to Federal Rule of Civil Procedure 69 and Fla. Stat. § 56.29, Plaintiff/Judgment Creditor, Versant Funding LLC ("Versant"), respectfully moves this Court for the commencement of proceedings supplementary to execution ("Supplementary Proceedings") against the three entity Defendants against whom the Court entered a $3 million judgment on May 14, 2019 (DE 214), *i.e.*, (1) Teras Breakbulk Ocean Navigation Enterprises, LLC f/k/a Teras BBC Ocean Navigation Enterprises Houston, LLC, a Delaware limited liability company ("Teras BBC" or "TBONE")[1]; (2) Teras Cargo Transport (America), LLC, a Delaware limited liability company ("Teras Cargo

---

[1] Teras BBC has sometimes been referred to in this matter (*e.g.* in deposition testimony) as "TBONE." *See*, *e.g.*, Marling 25:2-8; 27:3-9.

America" or "TCTA")[2]; and (3) Teras Chartering, LLC d/b/a Teras BBC Chartering, LLC, a Delaware limited liability company ("TChart" and, together with Teras BBC and Teras Cargo America, the "Judgment Debtor Defendants" or "Teras Entity Defendants").

Versant further moves for an order of this Court pursuant to Fla. Stat. § 56.29(2) impleading and issuing a Notice to Appear to each of the following six entities as Third-Party Defendants (collectively the "Alter-Ego Defendants") in this action: 1) Teras America, LLC ("Teras America"); 2) PNG Project Services, Ltd. ("PNG"); 3) Teras Queensland, Ltd. ("Teras Queensland"); 4) TrueNorth Energy Systems, LLC ("TNE"); 5) Cargo Risk Consulting, LLC ("CRC"); and 6) SJS Investments, LLC. ("SJS").

## PRELIMINARY STATEMENT

The Court is very familiar with this litigation having signed the consent final judgment in this case. In brief summary, the Judgment Debtor Defendant Teras BBC fraudulently sold Versant a fake account receivable for $1.4 million pertaining to the delivery of a ship called the *Seattle* for use by the Military Sealift Command. Defendants knew that the *Seattle* was unlikely to complete its voyage, in part, because the *Seattle* lacked the necessary spare parts to make a transatlantic voyage. Defendant Sanders had funneled millions of dollars out of the operation of the *Seattle* into his other business interests through questionable loans and business deals. Consequently, the Judgment Debtor Defendants lacked the funds to pay for critical spare parts or maintenance for the ship. When the Military Sealift Command cancelled its contract with Teras BBC upon the *Seattle* breaking down, Sanders proffered a number of false claims regarding the *Seattle* to forestall Versant from collecting what was owed to it.

On May 14, 2019 Versant obtained a Consent Final Judgment from this Court against the Judgment Debtor Defendants for $3,000,000 (DE 214; Declaration of Russell Bogart, Esq. filed herewith ("Bogart Decl.") Ex. A) having previously entered a Settlement Agreement with Sanders (*see* DE 215 & 216). In paragraph 2 of the Consent Final Judgment, the Judgment Debtor

---

[2] Teras Cargo America has sometimes been referred to as "TCTA." *See*, *e.g.*, McFadden 44:5-7.

Defendants agreed (and the Court ordered) that they "shall cooperate in the execution and recognition of this Final Judgment as well as any collection and levying process, which would include subpoenas to any persons or entities having knowledge, possession and/or control of the [Judgment Debtor] Defendants' assets with the production of financial documents at the U.S. Court" (and that this Court "shall maintain jurisdiction with regard to any enforcement proceedings regarding this Consent Final Judgment, or any other proceedings arising under this Consent Final Judgment, which will be construed under the laws of the State of Florida"). DE 214 (Bogart Decl. Ex. A). However, since that time, while Sanders has made payments to Versant under the Settlement Agreement, none of the Judgment Debtor Defendants has paid a single cent of their obligation owed to Versant, and Versant is owed in excess of $1,675,000 pursuant to the judgment.[3]

As shown below, Sanders had transferred tens of millions of dollars out of the Judgment Debtors to other companies controlled by him, such as its parent Teras America, for the purpose of frustrating their creditors, including Versant.[4] Additionally, Sanders used an entity nominally owned by his wife, called Cargo Risk Consulting LLC, to conceal his transferring of millions of dollars out of the Judgment Debtors for no consideration. Due to Sanders' consistent abuse of the corporate form by freely transferring funds between these alter egos, it would be manifestly unjust to allow the denuded Judgment Debtor Defendants to escape their obligations to Versant under this judgment while their corporate alter egos retain the funds of their collective venture.

---

[3] Versant holds an unsatisfied judgment in the amount of $1,350,000, plus post judgment interest in the approximate amount of $150,000, out of pocket expenses of $4,936.34 and attorneys' fees accrued in seeking to enforce the judgment in excess of $170,000. In sum, Versant is owed in excess of $1,675,000 pursuant to its judgment. *See* Bogart Decl. ¶¶ 4-6.

[4] As will be the subject of a forthcoming motion, Teras America has refused to comply with a document subpoena demanding the production of records showing to whom Teras America conveyed the more than $11 million received from Teras Cargo America. The Debtors have represented that Teras America is in dissolution.

**FACTUAL AND PROCEDURAL BACKGROUND**

Sanders owned and operated a web of domestic and foreign entities that entered into multi-million dollars contracts with the United States Military, oil companies and others to provide international freight shipping services. In 2015, Sanders recognized that he was in jeopardy of losing control of his shipping enterprise because of mounting creditor claims and his inability to pay for the maintenance of the ships. Thus, Sanders diverted millions of dollars out of the shipping companies (which generally used the Teras name) to himself, family members, colleagues and separate companies he controlled involved in energy projects and projects involving "pontoons" (which generally used the "True North" name).

Sanders owns eighty point one percent (80.1%) of the stock of a Singapore company, Teras Cargo Transport Pte. Ltd ("Teras Pte"), and another Singapore company, Ezion Holdings Limited, owns nineteen point nine percent (19.9%) of the stock of Teras Pte (DE 144 ¶¶ 8-10; Marling 20:17-21.). Teras PTE was the parent of all of the Teras Cargo Transport entities. Marling 16:12-14; 21:17-22. Teras Pte owns ninety seven percent (97%) of the shares of Teras America LLC, which wholly owns the Defendant TCTA, which wholly owns the Defendants TChart and Teras BBC (*Id.* 19:15-19). Teras America LLC was "essentially a hold-co and an employer of" Teras Cargo Transport (America). Marling 21:1-16. Teras Cargo Transport (America) LLC and Teras America both had their headquarters at the same location, 5358 33rd Avenue in 25 Gig Harbor, Washington. Marling 19:23-20:4. As the "owner" and Chief Executive Officer of Teras, Sanders made "every decision in the company" (Marc Marling Tr. 15, 83; Tim Lord Tr. 59-60).

Sanders and another individual, Jerry Miller, through JJ Seattle, LLC were the joint owners of the *Seattle* (DE 152 ¶6). JJ Investment Group LLC ("JJIG") owned the JJ Seattle, LLC ("JJ Seattle") (*id.*). The two members of JJIG were JM Ship, LLC ("JM Ship") and SJS Investments, LLC ("SJS") (*id.*). Miller owned JM Ship and the Defendant TCTA owned SJS (*id.*). Teras BBC chartered the *Seattle* from JJ Seattle and served as the Managing Member of JJ Seattle (*id.*).

The relationship between Sanders' relevant "Teras" entities is illustrated below (with the

Judgment Debtor Defendants in red boxes):



***Sanders Abused the Corporate Form and Co-Mingled Assets and Obligations with Alter Ego Entities***

In operating all of these entities, Sanders routinely abused the corporate form as a common business practice, and flagrantly co-mingled financial assets and obligations.

Marc Marling, executive vice president and later president of Teras Cargo Transport (America), testified that Sanders defrauded and frustrated creditors, including by intentionally operating the entities to fraudulently show paper losses to frustrate taxing authorities (and creditors). *See* Marling 96:5-11; 97:3-4; 98:21-99:16. ("Joe told me once that he wanted to run every business, that he essentially wanted all his businesses to run as losses so he didn't have to face taxation" and "I was led to believe, that money would be drawn out in other things so that, you know, they wouldn't -- so that the companies would not be in a taxable state at the end of the year."). Marling also testified that: i) Sanders doubled his salary in January 2016 while the

5

Judgment Debtors couldn't pay their debts; ii) made questionable loans to his son-in-law of a few hundred thousand dollars, and to a colleague in Singapore for a million dollars; iii) significantly increased the pay to an employee Amanda Sprang, who then obtained a suspicious mortgage on Sanders' property in Texas just as Miller was taking control of the *Seattle*. Marling Tr. 87-95.

Sanders manipulated his balance sheets and freely transferred funds between entities at his sole discretion through the frequent use of interest and contract-free transfers between companies, documented only on the general ledger as "Intercompany Receivables" or "Related Party Receivables" (McFadden Tr. 85:12-86:22; 88:20-89:11). Sanders operated the Judgment Debtor Defendants and Alter-Ego Defendants as a general slush fund of assets, such that the financial obligations of any Sanders-owned entity were paid by whichever entity had the funds at hand (McFadden Tr. 57:20-59:13). As the Sanders-owned entities all operated out of the same location, collective expenses such as rent were paid in full by Teras Cargo America. (McFadden Tr. 66:22-67:3). This was designed to frustrate Teras Cargo America's creditors while making Sanders' other businesses more profitable.

The Teras Cargo America Balance Sheet showed that as November 15, 2019, Teras Cargo America was owed $38,273,094.31 in "Intercompany Receivables" – i.e., entities owned directly or indirectly by Teras Cargo Transport PTE, LTD, the Singapore parent of Teras Cargo America. *See* Declaration of Joshua C. Gillette, Esq. ("Gillette Decl.") Ex. B (McFadden Dep. Ex. 20); Marling 16:12-14; 21:17-22 Marling 20:17-21; McFadden 85:12-86:6. Additionally, as of November 2019, Teras Cargo America was owed $2,639,516.07 in "Related Party Receivables" – i.e., True North entities owned by Sanders. Gillette Decl. Ex. B at p. 7. McFadden testified Sanders routinely abused and disregarded the corporate form in paying these so-called "intercompany receivables":

> Q And how was it decided that one entity would pay an obligation for another entity?
>
> **A Usually it was whoever had the cash.**

Q So if Joe had -- Joe Sanders had five or six entities and there was an obligation that came up for one of them and only one of them had the cash on hand, that entity would pay for it?

**A Yes.**

Q Were there -- was this negotiated between two people or did Joe just make a decision?

**A Joe made a decision because it was all part of PTE.**

Q Is there any documentation of these obligations besides the general ledger?

**A No, it would come from the ledger.**

*   *   *

Q You said that Joe Sanders would take money from one Teras entity under Teras PTE and pay for an obligation of another Teras entity under PTE, depending upon which entities had liquidity and where the obligation arose, correct?

**A Correct.**

Q And if people are dealing with each other at arm's length, and A decides to cover an obligation for B, their lawyers would sit down and write a contract and have a note and have interest rates and negotiate the terms of the loan. Was that done or Joe just said move the money?

**A No, that was not done. It would be you would record that it was paid by entity A, on behalf of entity B, so you wind up with an intercompany being recorded but there was no contracts or documentation other than how you posted the journal entry.**

McFadden 57:20-59:13.

As of November 15, 2019, the Alter-Ego Defendants owed Defendant Teras Cargo America the following amounts, per their own financial statements:

| Teras America | $11,641,243.26 |
|---|---|
| PNG | $425,306.74 |
| Teras Queensland | $872,757.85 |
| TNE | $218,966.55 |
| CRC | $5,000,000 |
| **Total:** | **$18,158,274.40** |

Thus, collectively, the Alter-Ego Defendants debts to Teras Cargo America are far more than sufficient to satisfy the remainder of the judgment currently owed to Versant by the Judgment Debtor Defendants. The Teras Cargo America Balance Sheet and General Ledger demonstrate that after the Judgment Debtor Defendants started conducting business with Versant in October 2015, Judgment Debtor Defendant Teras Cargo America moved to the Alter Ego Defendants amounts in excess of the judgment currently owed to Versant. *See* Gillette Decl. ¶¶ 8-13 and Ex. B, G & H (showing that on information and belief and based on the attached documents, a total of approximately $4,174,787 was moved from the Judgment Debtor Defendants to the Alter Ego Defendants after October 2015).

As yet another example of abuse of the corporate form, McFadden prepared a purported "P&L Statement" for Teras BBC which reported the bank account information, and liabilities of SJS, Teras BBC and the JJ Seattle LLC as part of one commingled enterprise operated under the name of Teras BBC (a/k/a TBONE) (Gillette Decl. Ex. E (Sanders Deposition Ex. 13 and 13-A through 13-D)). For example, McFadden's purported P&L Statement for Teras BBC reports the PNC bank account information for the JJ Seattle, as if such funds belonged to Teras BBC (Gillette Decl. Ex. E; Hopkins 65-68). Moreover, McFadden prepared financial statements for the JJ Seattle which mischaracterized the $1.5 million diverted from JJ Seattle to TCTA as undocumented loans and as bogus prepaid expenses (*Id*.). Yet, the Teras BBC P&L Statement describes those same transfers as the payment of management fees out of Teras BBC to Teras/Sanders. (*See* Hopkins 57-71 and Gillette Decl. Ex. E).

Finally, in 2018, in an arbitration action before the American Arbitration Association against Sanders's wholly-owned entity SJS, the AAA Decision found (*inter alia*) that Sanders, through SJS, "misappropriated" $1.5 million from the JJ Seattle, LLC to TCTA. This finding that Sanders fraudulently siphoned off funds from one entity to another is further, conclusive evidence that he operated the Alter Ego Defendants as alter egos (and should estop any claim to the contrary).

### *Sanders Siphoned Off Millions Through Cargo Risk Consulting*

Cargo Risk Consulting was a company allegedly owned by Sanders' wife but controlled by Sanders to siphon off funds from his businesses. For example, Cargo Risk held the lease on the facility in Gig Harbor, Washington that was used by all of the Teras and True North entities. The Judgment Debtor Teras Cargo paid rent to Cargo Risk on behalf of all of the Teras and True North Entities. Moreover, Cargo Risk charged a "significant markup" to Teras Cargo for the rent under the pretense of providing services such as reception that in fact were not provided.

Sanders also arranged for Cargo Risk to purchase approximately $5 million in pontoons from Teras Cargo and sell them to Ezion Holdings at a markup (McFadden 71-74). However, Cargo Risk did not actually make a payment to Teras Cargo but rather became obligated to make a payment when paid by Ezion (*id*.). Cargo Risk received a partial payment of over $1 million (McFadden Tr. 90-94), but never made a payment to Teras Cargo either directly (McFadden 71-74) or through a reduction of the marked up rent (McFadden 106-109).

Sanders conducted all of the negotiations with Ezion himself (McFadden 117-118). Sanders used Cargo Risk to avoid the use of Teras Cargo (an indirect subsidiary of Ezion) in the deal with Ezion. McFadden 117-118.

### **ARGUMENT**

### I. PLAINTIFF IS ENTITLED TO PROCEEDINGS SUPPLEMENTARY TO EXECUTION.

#### A. Proceedings Supplementary to Execution Are Warranted Under Fed. R. Civ. P. 69 and Fla. Stat. § 56.29.

Federal Rule of Civil Procedure 69(a)(1) ("Money Judgment; Applicable Procedure") provides that "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Thus, under this Rule, where, as here, no federal statute governs, the procedure for the execution or collection on final judgments, including

proceedings supplementary to and in aid of execution, is controlled by state law. *See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-cv-62688, 2019 U.S. Dist. LEXIS 90546, at *3-4 (S.D. Fla. May 30, 2019); *Mission Bay Campland, Inc. v. Sumner Fin. Corp.*, 71 F.R.D. 432, 433 (M.D. Fla. 1976) ("the procedural law of Florida concerning postjudgment proceedings controls unless there are federal statutes to the contrary.").

Under Fla. Stat. § 56.29(1), a judgment creditor is "entitled to" the "proceedings supplementary to execution" set forth in § 56.29 when the creditor "holds an unsatisfied judgment" and files the documents required by the statute. *Longo v. Associated Limousine Servs.*, 236 So. 3d 1115, 1119 (Fla. Dist. Ct. App. 2018) (granting of supplementary proceedings is nondiscretionary upon satisfaction of the statutory filing requirements). These proceedings supplementary permit a judgment creditor to summarily discover property belonging to a debtor to satisfy the judgment, and to subject these assets to the judgment by use of summary proceedings.

Courts generally interpret the statute broadly and liberally to afford judgment creditors the most complete relief possible in order to satisfy their judgments. *See Bleidt v. Lobato,* 664 So. 2d 1074 (Fla. 5th DCA 1995); *Neff v. Adler,* 416 So. 2d 1240 (Fla. 4th DCA 1982); *Puzzo v. Ray,* 386 So. 2d 49, 50 (Fla. 4th DCA 1980). For instance, § 56.29(6) allows the Court to enter any order required to carry out the purpose of the statute to subject property, or property rights, of any defendant to execution. Thus, the Court may order any property of a judgment debtor in the hands of any person, or property due to the judgment debtor, to be applied toward the satisfaction of the judgment debt (unless exempt from execution). Fla. Stat. § 56.29(6). The Court may also order that the Judgment Debtors provide discovery, under Fla. Stat. § 56.30.[5]

Once a judgment debtor's assets are discovered, proceedings supplementary may be used to set aside fraudulent transfers of the debtor's property to third persons, or to pierce the corporate veil and reach corporate assets in the hands of individual stockholders. *See Allied Indus. Int'l, Inc.*

---

[5] Fla. Stat. § 56.30 provides that the Court may "[i]n addition to any other discovery permitted under the rules of civil procedure … require the judgment debtor to appear … to be examined concerning property subject to execution." Versant intends to move for discovery from each entity pursuant to Fla. Stat. § 56.30 if the Court grants Versant's request for supplementary proceedings.

*v. AGFAGevaert, Inc.,* 688 F. Supp. 1516 (S.D. Fla. 1988), *aff'd.,* 900 F.2d 264 (11th Cir. 1990). A court may also reach a debtor's assets in the hands of a successor corporation under the theory of successor liability, *i.e.,* mere continuation, de factor merger, alter ego or fraudulent transfer. *See Amjad Munim, M.D., P.A. v. Azar,* 648 So. 2d 145 (Fla. 4th DCA 1995).

Such proceedings may also be used to secure, seize and sell corporate stock that is owned by the judgment debtor (*see J.N. Laliotios Eng'g. Constr., Inc. v. Mastor*, 600 So. 2d 1271 (Fla. 2d DCA 1992)); to enter injunctive relief to enjoin a transfer of assets that would amount to fraud upon the judgment creditor (*see Tabet v. Tabet*, 644 So. 2d 557 (Fla. 3d DCA 1994)); to have a receiver appointed to take possession of the debtor's property (*see Warshall v. Price*, 617 So. 2d 751, 752 (Fla. 4th DCA 1993)); or to reach equitable assets that are not subject to levy under a writ of execution such as promissory notes, accounts receivable, choses in action, and intellectual property such as trademarks (*see Continental Cigar Corp. v. Edelman & Co.* 397 So. 2d 957 (Fla. 3d DCA 1981)).

Accordingly, pursuant to this authority, Versant seeks to use these proceedings, inter alia, to seize and levy the interest that SJS Investments holds in the *Seattle*.

The statutory requirements for a judgment creditor to invoke the "proceedings supplementary to execution" set forth in § 56.29 are minimal: the judgment creditor holding an unsatisfied judgment need only "file a motion and an affidavit so stating, identifying, if applicable, the issuing court, the case number, and the unsatisfied amount of the judgment or judgment lien, including accrued costs and interest, and stating that the execution is valid and outstanding." Fla. Stat. § 56.29(1).

Versant has done so here. As set out in the Affidavit of Russell Bogart dated May 7, 2020 filed herewith ("Bogart Decl."), on May 14, 2019 Versant received a Consent Final Judgment from this Court against the Teras Entity Defendants for $3,000,000 [DE 214] (Bogart Decl. Ex. A). To this day, the Teras Entity Defendants have failed to satisfy this judgment and have failed to cooperate in its execution. Accordingly, Versant has satisfied the basic statutory requirements of Fla. Stat. § 56.29(1) and is entitled to engage in proceedings supplementary. Nothing else is

11

statutorily required. *Biel Reo, LLC v. Barefoot Cottages Dev. Co.*, 156 So. 3d 506, 509 (Fla. 1st DCA 2014) ("Once these procedural prerequisites are met, a Judgment Creditor is 'entitled to the proceedings supplementary,' §56.29(1); a court cannot deny a motion that meets the statutory prerequisites") (citing *Biloxi Casino Corp. v. Wolf*, 900 So. 2d 734 (Fla. 4th DCA 2005)); *Regent Bank v. Woodcox*, 636 So. 2d 885, 886 (Fla 4th DCA 1994) (pursuant to Fla. Stat. § 56.29, judgment creditors have a "useful, efficacious and salutary remedy…to subject [assets to]…a speedy and direct proceeding in the same court in which the judgment was recovered.") ; *Rosenfeld v. T.P.I. Int'l Airways*, 630 So. 2d 1167, 1168 (Fla. 4th DCA 1993); *Continental Cigar Corp.*, 397 So. 2d 957, 958 (Fla. 3d DCA 1981).

### B. The Court Should Authorize Proceedings Supplementary to Execution Against, and Impleader of, the Alter-Ego Defendants.

Under Fla. Stat. § 56.29(2), a judgment creditor may "implead third parties to expeditiously discover a judgment debtor's assets" and subsequently recover those assets without initiating a new legal proceeding. *Flava Works, Inc. v. A4a Reseau, Inc.*, No. 14-23208-CIV-LENARD/GOODMAN, 2019 U.S. Dist. LEXIS 128959, at *5 (S.D. Fla. June 11, 2019). To do so, the judgment creditor must "describe 'any property of the judgment debtor' or 'any property, debt, or other obligation due to the judgment debtor' that may be applied to satisfy the judgment, so as to enable the trial court to issue Notices to Appear that describe the property, debt, or other obligation 'with reasonable particularity.'" *Longo v. Associated Limousine Servs.*, 236 So. 3d 1115, 1120 (Fla. Dist. Ct. App. 2018).

Fla. Stat. § 56.29(6) provides a statutory basis for the avoidance of any gift, transfer, assignment or other conveyance made in an attempt to hinder or defraud creditors. *Alberta, Ltd. v. 279298 Alberta, Ltd*., 675 So.2d 1385 (Fla. 4th DCA 1996). Moreover, Fla. Stat. § 56.29(9) also specifically allows the Court to entertain claims relating to Fla. Stat. Ch. 726, Florida's codification of the Uniform Fraudulent Transfer Act.

In cases where, as here, the judgment creditor seeks to implead a third party as an alter ego, however, the procedure outlined in Fla. Stat. § 56.29(9) is unnecessary because "[a] third party's

12

liability under an alter ego theory is not premised upon a fraudulent transfer of the judgment debtor's property, but is instead premised on the notion that the judgment debtor and third party should be treated as the same entity." *Longo,* 236 So. 3d at 1121. Here, Teras America, PNG, Teras Queensland, TNE, CRC, and SJS are all alter egos of the Judgment Debtor Defendants.

Where – as here – a judgment creditor seeks to implead alleged alter egos of the judgment debtor, the judgment creditor may do so under Fla. Stat. § 56.29(2) by describing any property held, or obligation owed to the judgment debtor, *by such alleged alter egos* that may be used to satisfy the judgment. *Id.*, 236 So. 3d at 1120 ("in cases alleging alter ego liability, the description requirement of section 56.29(2) is satisfied if the judgment creditor describes any property of an alter ego of the judgment debtor not exempt from execution in the hands of any person, or any property, debt, or other obligation due to an alter ego of the judgment debtor which may be applied toward the satisfaction of the judgment.")*; see also LB Judgment Holdings, LLC v. Boschetti*, 271 So. 3d 115, 120-21 (Fla. Dist. Ct. App. 2019) (in cases alleging alter-ego liability, description requirement satisfied where judgment creditor "describes any property of an alter ego of the judgment debtor not exempt from execution in the hands of any person … which may be applied toward the satisfaction of the judgment"; requirement may also be satisfied by describing "any property, debt, or other obligation due to an alter ego of the judgment debtor"); *Floridians for Solar Choice*, 2019 U.S. Dist. LEXIS 90546 at *5-6 (citing *Longo*). As this Court explained in *Floridians for Solar Choice*:

> Compliance with these prerequisites [of under Fla. Stat. § 56.29(2)] provides the predicate for issuing Notices to Appear and impleading any named third parties to the supplementary proceedings. *MCI Telecomms. Corp. v. O'Brien Mktg., Inc.*, 913 F. Supp. 1536, 1540 (S.D. Fla. 1995). Additionally, "[w]here the evidence so warrants, the court may order that the corporate veil be pierced and that the corporation's alter ego be made liable for the judgment." *Id.* A judgment creditor does not have to make a prima facie showing that the party to be impleaded holds the assets subject to the judgment. *Office Building, LLC v. CastleRock Sec., Inc.*, 2011 U.S. Dist. LEXIS 47812, 2011 WL 1674963, *2 (S.D. Fla. May 3, 2011). In a supplemental proceeding, a judgment creditor does not assert a cause of action against an impleaded party, but only seeks to identify and marshal the assets of the judgment debtor in the hands of the impleaded party. *Estate of Jackson v. Ventas Realty, Ltd. P'ship*, 812 F. Supp.2d 1306, 1310 (M.D. Fla. 2011). After being

13

> impleaded, the third party must appear and show cause as to why the contested property should not be applied to satisfy the judgment creditor's judgment. *Bodywell Nutrition, LLC v. Fortress Sys., LLC*, 846 F. Supp. 2d 1317, 1325 (S.D. Fla. 2012).

*Id.*, 2019 U.S. Dist. LEXIS 90546 at *4-5; *see also Flava Works, Inc.*, 2019 U.S. Dist. LEXIS 128959, at *4-8 (impleading alter ego); *Adobe Sys. v. Selacorp, Ltd.*, 2019 U.S. Dist. LEXIS 18941 (S.D. Fla. 2019) (permitting Judgment Creditor to institute proceedings supplementary and conduct an examination of judgment debtor which – like the Judgment Debtor Defendants here -- had "agreed in the Consent Judgment to 'cooperate in the execution and recognition of this Final Judgment…'").

### 1. Teras America, PNG, Teras Queensland, TNE, CRC, and SJS Are All Alter Egos of the Judgment Debtor Defendants.

When determining whether an entity functions as the corporate alter ego of a Defendant permitting piercing of the corporate veil, courts examine a multitude of factors. *Eitzen Chem. (Sing.) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 771 (11th Cir. 2018). It is unnecessary to allege every possible factor; rather enough factors must be present "to indicate the necessary degree of control by one company over the other to constitute an alter ego relationship." *Damian v. Yellow Brick Capital Advisers (UK) Ltd.*, No. 19-21538-CIV, 2019 U.S. Dist. LEXIS 196131, at *18 (S.D. Fla. Nov. 12, 2019) (citing *Eitzen*). Relevant to this matter, courts have examined: 1) common ownership; 2) common directors or officers; 3) whether the entities are financed by each other; 4) whether the parent entity caused the incorporation of the alleged alter ego subsidiary; 5) whether entities pay each others' salaries and other expenses; and 6) whether the entities use each other's property as their own. *Id. See also Longo*, 236 So. 3d at 1120-21 ("The concept of alter ego or continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name. The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other.") (citations and internal quotation marks omitted).

Under these standards, Teras America, PNG, Teras Queensland, TNE, SJS and CRC are all alter egos of the Judgment Debtor Defendants, and therefore each is subject to impleader under Fla. Stat. § 56.29(2).

### a. The Alter Ego Defendants and Judgment Debtor Defendants Have Common Ownership

All but one of the Alter Ego Defendants have common ownership with the Judgment Debtor Defendants: Defendant Sanders is the majority owner of each of the Judgment Debtor Defendants (Teras BBC, Teras Cargo America, and TChart), and Sanders also owns each of the Alter Ego Defendants (SJS, Teras America, PNG, Teras Queensland, and TNE). Marling 12:2-8; 19:3-13; 19:15-19; 20:17-21; 21:1-16. (Sanders owned 80.1 percent of Teras Cargo Transport PTE, Ltd, which owns 97 percent of Teras America; Teras America was the parent entity, 100% owner, and "essentially a hold-co and an employer of" Teras Cargo America) Marling 16:12-14; 21:17-22 (Teras Cargo Transport PTE, LTD "was the parent of all of the Teras Cargo Transport entities"); McFadden 28:3-29:10 (Sanders owned TrueNorth entities); Marling 22:19-24 (Sanders owned PNG Project Services Limited and Teras Queensland Limited); Marling Tr. 15; 171; 183; Tim Lord Tr. 59-60 (as the "owner" and Chief Executive Officer of Teras, Sanders made "every decision in the company").

Rather than being directly owned by Sanders himself, CRC is an entity allegedly wholly owned by Sanders' wife, Geraldine Sanders. However, despite the supposed nominal ownership of CRC by his wife, Sanders controlled the entity and negotiated the terms of CRC's business dealings and sales. (McFadden Tr. 117:16-118:11). Sanders operated through CRC so that business partners who were skittish of buying goods directly from him could avoid having the name "Teras" on the invoice. (McFadden Tr. 117:19-118:2).

### b. The Alter Ego Defendants and Judgment Debtor Defendants Have Common Directors and Officers

The six Sanders-owned entities shared a number of officers and employees. Katherine McFadden served as the CFO for the Sanders-owned entities, providing services as each entity required. (McFadden Tr. 19:12-19). The entities further shared a common controller, Dennis

15

Weller, and other employees who created financial records (McFadden Tr. 16:5-17; 37:8-13). As another example, Marling was an employee of Teras America and executive vice president, and then president, of Teras Cargo Transport (America). Marling 15:7-12; 18:18-21. There is no indication that any employee received multiple, separate salaries from each Sanders-owned entity. Rather, these employees were paid by a single entity to provide services to the whole.

Furthermore, like the other Alter-Ego Defendants, CRC operated out of the same location as the Judgment Debtor Defendants, and also shared common employees. (McFadden Tr. 64:22-23; 116:22-23). Moreover, Sanders was a de facto officer of CRC, and was not formally identified as an officer of CRC to further his fraud.

The employees of CRC and the Sanders-owned entities further shared a common insurance pool, the terms of which were negotiated by shared employee: Anita Ray. (McFadden Tr. 116:12-117:8).

### c. Co-mingling of Financial Assets and Obligations Between the Alter Ego Defendants and Judgment Debtor Defendants

These entities also readily satisfy the other relevant factors showing that they are alter egos, because "the entities are financed by each other," "pay each others' salaries and other expenses," and "use each other's property as their own." *Damian*, 2019 U.S. Dist. LEXIS 196131, at *18 (citing *Eitzen*). As shown above in detail, in operating these entities, Sanders routinely abused the corporate form as a common business practice, and flagrantly co-mingled financial assets and obligations, and manipulated his balance sheets and freely transferred funds between entities at his sole discretion, through interest and contract-free transfers between companies noted only as "Intercompany Receivables" or "Related Party Receivables." As also shown above, as reflected on the balance sheet appended as Gillette Decl. Ex. B (McFadden Depo. Ex. 20), each of the Alter-Ego Defendants owes significant debts to Judgment Debtor Defendant Teras Cargo Transport (America) ("Teras Cargo America"). Collectively, the Alter-Ego Defendants' debts to Teras Cargo America total $18,158,274.40, far more than sufficient to satisfy the remainder of the $1.675 million currently owed to Versant by the Judgment Debtor Defendants. *See Floridians for Solar*

*Choice*, 2019 U.S. Dist. LEXIS 90546, at *5-6 (Plaintiff satisfied statutory prerequisites of § 56.29(2) for impleading third parties where its motion "sufficiently identifies nine categories of property, debt, or other obligation due of the alleged alter egos").

There is no reason to believe that these debts owed to Teras Cargo America are exempt from execution. Rather, the onus rests on the Alter-Ego Defendants to appear and "show cause why the contested property should not be applied toward satisfaction of the judgment." *Bodywell Nutrition, Ltd. Liab. Co. v. Fortress Sys., Ltd. Liab. Co.*, 846 F. Supp. 2d 1317, 1325 (S.D. Fla. 2011).

As further evidence of the abuse of the corporate form, Teras Cargo America's balance sheets once had listed substantial "Fixed Assets." As of December 31, 2015 it claimed to have: $127,470.67 in "Computer Equipment and Software," $46,485.52 in "Furniture and Fixtures," $80,709.28 in "Ships Gear," and $98,117.17 in "Containers," for a total of $352,782.64. (Gillette Decl. Ex. B at 1). As of December 31, 2017, Teras Cargo America reported that it held $0.00 in value for both "Computer Equipment and Software" and "Furniture and Fixtures." By December 31, 2018, Teras Cargo America reported that it held $0.00 in value for both "Ships Gear" and "Containers." (*Id.* at 4.) On information and belief, these fixed assets were transferred over to the Alter-Ego Defendants for continued use by the both the Judgment Debtor Defendants and the Alter-Ego Defendants, without the payment of any consideration to Teras Cargo America.

Moreover, the Judgment Debtor Defendants treated SJS – the entity through which Sanders owned the Alter Ego Defendants -- as their alter ego.  This is most conclusively demonstrated by the Judgment Debtor Defendants' offer to give SJS's sole asset to JM Ship if JM Ship agreed to repay Sanders' and Teras BBC's liability to Versant.  Judgment Debtor Defendants abused the corporate form of SJS to siphon off $1.5 million from JJ Seattle to subsidize their other business interests and to pay themselves illicit management fees.

Versant was injured by the Judgment Debtor Defendants' scheme, because the Judgment Debtor Defendants' desperation to cover-up their defalcations led to them fraudulently soliciting Versant to purchase a $1.4 million fake invoice.  Additionally, the Judgment Debtor Defendants'

17

shuffling of their funds through their corporate entities has diminished, if not rendered to be worthless, the value of Versant's security interest in Teras's assets. Hence, the Judgment Debtor Defendants themselves treated SJS's supposedly separate corporate form as a legal fiction, and the Court should do the same under the alter ego doctrine.

## CONCLUSION

For the foregoing reasons, Plaintiff/Judgment Creditor, Versant respectfully requests that the Court enter an Order: (1) allowing Versant to commence Supplementary Proceedings in Aid of Execution and impleading the aforementioned Alter-Ego Defendants; (2) issuing Notices to Appear to each of the Alter-Ego Defendants, in the form attached hereto as Exhibit A; and (3) requiring each Alter-Ego Defendant to respond to the Notice to Appear within seven business days from the date of service of the order granting this motion, and to provide any and all information regarding the assets, funds, and property of the Alter-Ego Defendants; and (4) granting Versant its costs for these proceedings supplementary, as well as reasonable attorney's fees against Judgment Debtors, pursuant to Fla. Stat. § 56.29(8) and the Consent Final Judgment.

Dated: May 21, 2020

Respectfully submitted,

| WASCH | RAINES, LLP | KAGEN & CASPERSEN PLLC |
|---|---|

*/s/ Adam G. Wasch*  　　　　　　　　　　　*/s/ Russell L. Bogart*
Adam G. Wasch, Esq.　　　　　　　　　　Russell L. Bogart, Esq.
Florida Bar No. 071082　　　　　　　　　Admitted Pro Hac Vice
2500 N. Military Trail, Suite 303　　　　　757 Third Avenue, 20th Fl.
Boca Raton, FL 33431　　　　　　　　　New York, NY 10017
Phone: (561) 693-3234　　　　　　　　　Phone: (212) 880-2045
Fax: (561) 404-1104　　　　　　　　　　Fax: (212) 646-7879
awasch@waschraines.com　　　　　　　rbogart@kagencaspersen.com
*Counsel for Plaintiff*　　　　　　　　　　*Co-Counsel for Plaintiff*