# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

---

VERSANT FUNDING LLC,
Plaintiff,

v.

TERAS BREAKBULK OCEAN NAVIGATION ENTERPRISES, LLC,
f/k/a TERAS BBC OCEAN NAVIGATION ENTERPRISES HOUSTON, LLC;
TERAS CARGO TRANSPORT (AMERICA), LLC;
TERAS CHARTERING, LLC d/b/a TERAS BBC CHARTERING, LLC;
and SONNY JOE SANDERS,
Defendants,

and

TERAS AMERICA, LLC;
PNG PROJECT SERVICES, LTD.;
TERAS QUEENSLAND PTY LTD.;
TRUENORTH ENERGY SYSTEMS, LLC;
CARGO RISK CONSULTING, LLC;
and SJS INVESTMENTS, LLC,
Third-Party Defendants.

CASE NO.: 17-cv-81140-WPD

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION REGARDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE

---

Plaintiff fails to provide credible evidence showing an assignment of privilege rights, fails to establish any express or implied waiver, and fails to account for the independent business confidentiality interests embedded in the communications at issue. SAK Liquidation LLC ("SAK") was created and funded by Plaintiff, Versant Funding LLC ("Versant"), for the sole purpose of purchasing claims held by the bankruptcy trustee in the Teras bankruptcy proceedings. Versant served both as a creditor in the Teras bankruptcy and is now a Plaintiff in this action, controlling SAK's litigation strategy. This dual role creates an inherent conflict and undermines any claim that SAK acts independently regarding privilege rights. The Trustee sold claims, including fraudulent transfer causes of action, to SAK. Consequently, Versant stands to gain an unfair litigation advantage by improperly accessing Defendants' privileged communications through its control of SAK.

The disputed emails reflect internal communications between former Teras employees, a few of whom later joined third-party defendant TrueNorth Projects LLC ("TrueNorth"), a newly formed, independent company. Due to residual access to both Teras and TrueNorth email domains (which operated on the same server platform during the transition period), employees sometimes used both domains interchangeably, often by habit. Company policy was clarified by early 2017 to discontinue use of Teras domains. Use of overlapping email domains without any disclosure outside the common interest group does not constitute waiver of privilege. See *In re Teleglobe Communications Corp.*, 493 F.3d 345, 361 (3d Cir. 2007); *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996); *FTC v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1270 (D.C. Cir. 2018). Plaintiff is responsible for obtaining and producing TrueNorth's archived emails from Global Relay, instead, Plaintiff transmitted these emails to Defendants in a format that prevented

meaningful review or downloading. Because Defendants and the Court lack access to the actual content of the communications, privilege determinations cannot be properly adjudicated at this time.

In late 2020, following Teras's bankruptcy filing, the Trustee obtained full, exclusive access to the Teras email archive maintained by Global Relay. Therefore, the Trustee retained complete control over the archived emails involving both the Teras and TrueNorth domains for going on five years. (See Decl. of A. Ray, Exh. #1, excerpt from Plaintiff's production of Teras documents GR00032-51; Decl. of A. Ray, Exh. #2 excerpt from Plaintiff's production of Teras documents GR000427). Critically, during the period identified above, the Trustee never asserted a claim of privilege over any communication in the archive – including the emails at issue here. Courts have consistently recognized that the failure to timely assert privilege rights over materials accessed, reviewed, and controlled for a prolonged period can constitute waiver by inaction.  Exhibits #1 & #2 cited above from Global Relay confirm that the Trustee accessed and reviewed at least 170,000 Teras emails without asserting any privilege protection over them. *Id*. The Trustee's prolonged silence operates as a clear waiver of any alleged privilege. Further the role of the Dunn Law Firm, which represented the bankruptcy Trustee during the Teras proceedings, now acts as co-counsel for Plaintiff in this litigation. This overlapping representation raises serious concerns about the misuse of information obtained through unfettered access during the bankruptcy, and casts further doubt on Plaintiff's privilege claims.

Plaintiff contends that the mere appearance of both terasamerica.com and truenorthamerica.com email domains on certain communications results in an automatic waiver of attorney-client privilege. Courts have held the use of multiple corporate email domains, without more, does not

destroy the privileged nature of communications and that a fact-specific inquiry into the substance of the communications, the relationships between the parties, and the existence of a shared legal interest. *See In re Teleglobe Communications Corp.*, 493 F.3d 345, 364–65 (3d Cir. 2007); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). Here, the communications at issue occurred among individuals who either were employees of Teras America or later became employees of TrueNorth, a newly created independent entity. These individuals remained substantially the same across both companies, and there was no true disclosure of the emails at issue to outside third parties. During the transition period, some employees retained access to both Teras and TrueNorth email domains and used them interchangeably, often by habit rather than intent. The fact that different email domains appeared in otherwise internal communications does not, by itself, defeat privilege.

Even assuming, arguendo, that SAK properly purchased claims from the Trustee through the bankruptcy sale process, SAK nonetheless lacks standing to assert avoidance actions under 11 U.S.C. § 544(b). Fraudulent transfer claims are statutory causes of action belonging to the bankruptcy estate itself — not to the debtor and not to individual creditors. *See In re Tronox Inc.*, 503 B.R. 239, 268 (Bankr. S.D.N.Y. 2013). The right to pursue such claims arises from the estate's exclusive statutory authority, not from private ownership of underlying claims. Although bankruptcy courts may approve the sale of certain estate assets under 11 U.S.C. § 363, the transferability of avoidance actions remains unsettled and heavily scrutinized. Some courts have flatly rejected the notion that fraudulent transfer claims can be privately assigned without compelling justification. *See In re Valley Park, Inc.*, 217 B.R. 864, 867 (Bankr. D. Mont. 1998). Here, Plaintiff has offered no evidence that the bankruptcy court explicitly authorized the Trustee to transfer the fraudulent transfer causes of action to SAK. There is no order approving such a

transfer, no evidentiary record demonstrating court oversight, and no specific findings allowing Accordingly, SAK's attempt to assert or waive Defendants' privilege is legally improper and must be rejected.

An express waiver occurs only when a privilege holder voluntarily and knowingly discloses privileged communications in a manner clearly inconsistent with maintaining confidentiality. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). No such disclosure occurred here. The production of the disputed emails was compelled through a Court-ordered process requiring Plaintiff to pay for the retrieval and production of Global Relay's archive. Defendants never had the opportunity to review, assess, or selectively waive any privilege before transmission or after. because the emails are unreadable and inaccessible without specialized technical assistance. Without knowledge of the content, Defendants could not have intentionally waived privilege. (See Decl. of A. Ray, Item #4). Plaintiff's counsel has stated Defendants should retain the services of IT professional Joshua Hamby to complete the task. Mr. Hamby has been on unpaid furlough since February 1, 2024. (See Decl. of A. Ray, Item #3). Accordingly, Plaintiff should be required to complete its task regarding the emails at issue here. Plaintiff cites to letter from the Trustee dated February 14, 2025 purporting to evidence that the assignment of the ownership of his Teras privilege waiver, a full five years after the bankruptcy proceeding was initiated. However, the Trustee's email correspondence to the undersigned clearly states such a transfer would have occurred, if at all, on the initial date of his agreement with SAK to sell his claims:

> **I do not know what you are talking about concerning the sale not being final. It is final**. The Bankruptcy Court issued several orders on the matter. There was an appeal to the District Court which affirmed the Bankruptcy Court. Then there was appeal to the 11 Circuit which has been dismissed. **The only issue pending issue was that the estate could not use the sale proceeds until all the appeals were exhausted. But the sale was final**

**and since the 11 Circuit has dismissed the appeal the estate can utilize the funds to pay creditors**.

(See Decl. of A. Ray, Exhibit #3, email correspondence between R. Angueira and T. Lord). Accordingly, then the February 14 transfer was evidence of a purely executory transaction countering directly Plaintiff's allegations that the Trustee explicitly transferred his waiver rights to SAK in a manner that would strip Defendants of their privilege protections at the time of the production.  Pursuant to Plaintiff's argument, the trustee held the privilege from the time of the filing of the bankruptcy, August 8, 2020, until February 14, 2025.  As shown above in Exhibits 1 & 2, the trustee had access to the emails at issue here as early as late 2020.  This five-year delay in itself, without an explanation, indicates the trustee was acting solely for the benefit of and at the direction of SAK.  Here, Plaintiff has failed to cite — and has not produced — any agreement between the bankruptcy Trustee and SAK that expressly assigns privilege rights. Plaintiff's motion relies on generalized references to the sale of claims but ignores the strict legal requirement that assignments of privilege must be clear and unmistakable. *See Travelers Casualty & Surety Co. v. J.P. Morgan Securities LLC*, 73 A.3d 167, 174–75 (Del. 2013).

In Conclusion, Defendants respectfully request that the Court deny Plaintiff's Motion regarding waiver of attorney-client privilege in its entirety, or if the Court finds that any limited waiver has occurred, Defendants request that the Court narrowly tailor the waiver to avoid prejudice, require Plaintiff to re-produce all disputed communications in a readable, accessible format for proper review, and enter a protective order to safeguard confidential business information from dissemination beyond the confines of this litigation.

DATED: April 22, 2025

Respectfully submitted,

BELLO & MARTINEZ, P.L.L.C.
Joel A. Bello, Esq.
*Attorneys for Defendants & Third Party Defendants*
*Local Counsel*
2850 S. Douglas Road, Suite 303
Coral Gables, FL 33134
Telephone:  (305) 967-8594
Primary E-mail:  jbello@bmrlawgroup.com


By: *Joel A. Bello*
JOEL A. BELLO, ESQ.
Florida Bar No.: 573825

TIMOTHY R. LORD, ESQ.
*Attorneys for Defendants & Third Party Defendants*
*Admitted Pro Hac Vice*
5358 33rd Ave NW Ste 104
Gig Harbor, WA 98335-1773
Telephone:  (415) 342-9144
Primary E-mail:  tlord@truenorthamerica.com

By:  /s/ Timothy R. Lord, Esq.
TIMOTHY R. LORD, ESQ.
California Bar No.:  213062

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 22, 2025, a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon all parties who are currently on the list to receive e-mail notice and service for this case.

By: /s/ *Joel A. Bello*
Joel A. Bello, Esq.

By: /s/ *Timothy R. Lord*
Timothy R. Lord, Esq.