UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-81140-DIMITROULEAS/MATTHEWMAN

VERSANT FUNDING LLC, a Delaware
Limited Liability Company,

      Plaintiff,

vs.

TERAS BREAKBULK OCEAN
NAVIGATION ENTERPRISES, LLC f/k/a
TERAS BBC OCEAN NAVIGATION
ENTERPRISES HOUSTON, LLC; et al.,

      Defendants,

and

TERAS AMERICA, LLC; PNG PROJECT
SERVICES, LTD.; TERAS QUEENSLAND
PTY LTD.; TRUENORTH ENERGY
SYSTEMS, LLC; CARGO RISK
CONSULTING, LLC; AND SJS
INVESTMENTS, LLC,

      Third-Party Defendants.
_____/

## ORDER IMPOSING SANCTIONS DUE TO SUBMISSION OF "HALLUCINATED" CASE BY COUNSEL FOR DEFENDANTS AND THIRD-PARTY DEFENDANTS

**THIS CAUSE** is before the Court *sua sponte*. The issue before the Court is the Court's consideration of the imposition of sanctions upon counsel for the Defendants and Third-Party Defendants in light of their admitted submission of a wholly fabricated "hallucinated" case citation

1

contained within a Response [DE 371] they filed on April 22, 2025. The submission of the hallucinated case citation resulted from the use of Artificial Intelligence ("AI") without attorney verification of the accuracy of the case citation.

## I. THE FACTS ARE UNDISPUTED

There is no mystery as to what happened here. On April 22, 2025, Timothy R. Lord, Esq., admitted pro hac vice, and Joel A. Bello, Esq., as local counsel, both signed and filed a Response [DE 371] on behalf of the Defendants and Third-Party Defendants[1] to Plaintiff Versant Funding LLC's Motion for a Determination that the Teras Emails Are Not Privileged or That Any Applicable Privileges Have Been Waived [DE 368].[2] Mr. Lord is a member of State Bar of California and the Washington State Bar, as well as possibly other Bars, and Mr. Bello is a member of The Florida Bar and the Southern District of Florida Bar.

In their April 22, 2025 Response filed on the docket in this case, counsel Lord and Bello stated: "Plaintiff's motion relies on generalized references to the sale of claims but ignores the strict legal requirement that assignments of privilege must be clear and unmistakable. *See Travelers Casualty & Surety Co. v. J.P. Morgan Securities LLC*, 73 A.3d 167, 174–75 (Del. 2013)." [DE 371 at 6]. This *Travelers Casualty* case and citation is a clear hallucination submitted by counsel Lord and Bello.

In Plaintiff's Reply filed on April 24, 2025, Plaintiff's counsel explained that Plaintiff

---

[1] While the Response states that it is being filed on behalf of "Defendants", without defining that term, the Response is signed by two attorneys as "Attorneys for Defendants & Third Party Defendants."
[2] The Court recently entered its Order Granting Versant Funding LLC's Motion for a Determination that the Teras Emails Are Not Privileged or That Any Applicable Privileges Have Been Waived [DE 383], but did not address the submission of the hallucinated case in that order. The Court does so now.

2

"cannot respond to TrueNorth's claim that under a purported case, *Travelers Casualty & Surety Co. v. J.P. Morgan Securities LLC*, 73 A.3d 167, 174–75 (Del. 2013), that the assignment of privilege rights from the Trustee to SAK is invalid (DE 371, p.6). Upon multiple counsel checking Westlaw and Lexis, Versant was unable to locate the opinion, suggesting it is an AI generated hallucination." [DE 373 at 6]. The Court also conducted its own research and was unable to locate the cited case.

Thereafter, on May 8, 2025, approximately two weeks after Plaintiff pointed out the hallucinated case in its Reply [DE 373], Defendants filed a Notice of Withdrawal of Citation [DE 379], "withdrawing the following citation contained on page six (6) of its *Response to Plaintiff's Motion Regarding Waiver of Attorney-Client Privilege* filed at Docket Entry 371: *See Travelers Casualty & Surety Co. v. J.P. Morgan Securities LLC*, 174–75 (Del. 2013)." No explanation was given at that time as to why that case citation was withdrawn.

On the same date, May 8, 2025, the Court entered a Paperless Order [DE 380] requiring counsel Lord and Bello to file a response explaining how and why the non-existent case and citation appeared in the Response. On May 8, 2025, Defendants filed a response [DE 381], as required, and stated that Mr. Lord attempted to use AI to help him with legal research for the Response, never having used it before. *Id.* at 2. Once Mr. Lord determined that the case cited at the end of the Response did not exist, he called Plaintiff's counsel to apologize. *Id.* Mr. Lord is "willing to directly and personally reimburse Defendant's counsel for the time spent attempting to verify the erroneous cite and understand[s] that the Court may levy justifiable sanctions." *Id.* Counsel further stated, "Timothy R. Lord, Esq., and local counsel have also jointly initiated procedural safeguards to prevent this error from happening again by ensuring he, and local counsel,

3

undertake a comprehensive review of all citations and arguments filed with this and every court prior to submission to ensure their provenance can be traced to professional non-AI sources." *Id.* at 2–3.

The Court held a motion hearing via Zoom VTC on May 9, 2025, addressing the pending motion and this hallucination issue. At that hearing, Mr. Lord again apologized to the Court and opposing counsel. He also admitted that he used AI and failed to check the case citation before submitting the Response. He emphasized that he had never previously used AI for legal work and was unfamiliar with the process. Mr. Lord took full responsibility for the hallucinated citation. Further, as local counsel, Mr. Bello also admitted to not having checked the case citation before he filed the Response which had been prepared by pro hac vice counsel Mr. Lord.

In sum, this is a case where it is clearly established and admitted that pro hac vice counsel Lord utilized AI to research and prepare a Response containing a hallucinated case citation, which was filed with this Court by Mr. Bello who did not check the case citations. Both attorneys signed the filed Response.

## II. APPLICABLE RULES AND LAW

First, Federal Rule of Civil Procedure 11(b) states, in relevant part, that, in presenting to the Court a written and signed pleading, motion, or other paper, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and also that "(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P.

11(b)(1)–(2).

Second, The Local Rules for the Southern District of Florida refer to the obligations of pro hac vice counsel and local counsel when appearing in a case in this district. Specifically, Southern District of Local Rule 4(b)(3) requires as follows:

> A pro hac vice motion shall conform to the form provided for these purposes on the Court's website and designate at least one member of the bar of this Court who is authorized to file through the Court's electronic filing system, with whom the Court and opposing counsel may readily communicate regarding the conduct of the case, upon whom filings shall be served, and who shall be required to electronically file and serve all documents and things that may be filed and served electronically, and who shall be responsible for filing and serving documents in compliance with the CM/ECF Administrative Procedures. See Section 2B of the CM/ECF Administrative Procedures. The pro hac vice motion must be accompanied by a written statement consenting to the designation, and the address and telephone number of the named designee(s). Upon written motion and for good cause shown the Court may waive or modify the requirements of such designation.

S.D. Fla. L.R. 4(b)(3).

Third, "[e]very member of The Florida Bar and every lawyer of another state or foreign country who provides or offers to provide any legal services in this state is within the jurisdiction and subject to the disciplinary authority of this court and its agencies under this rule and is charged with notice and held to know the provisions of this rule and the standards of ethical and professional conduct prescribed by this court." Fla. R. Reg. Fla. Bar 3-4.1. The Rules Regulating the Florida Bar state that "[a] lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Fla. R. Reg. Fla. Bar 4-1.1. Further, "[t]o maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education, including an understanding of the benefits and risks associated

with the use of technology, including generative artificial intelligence, and comply with all continuing legal education requirements to which the lawyer is subject." *Id.*

Fourth, the Court has inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling. The Court's inherent power is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (internal citations and quotation marks omitted). Courts have long been recognized as having certain implied powers that are "necessary to the exercise of all others." *Id.* at 43 (citing *United States v. Hudson*, 11 U.S. 32, 34, 3 L. Ed. 259 (1812); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962)). A court's "inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Id.* at 46. To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith. *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x. 930, 931 (11th Cir. 2006).

Fifth, under 28 U.S.C. § 1927, attorneys can face sanctions for engaging in practices that unnecessarily delay or increase the complexity of the litigation. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees

reasonably incurred because of such conduct." 28 U.S.C. § 1927. To justify the grant of attorney's fees under 28 U.S.C. § 1927, the Court must find that (1) the attorney engaged in unreasonable and vexatious conduct; (2) such conduct multiplied the proceedings; and (3) the amount of the award does not exceed the costs, expenses, and attorney's fees reasonably incurred due to such conduct. *Goode v. Wild Wing Cafe*, 588 F. App'x 870, 874 (11th Cir. 2014) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)). Based on the foregoing, sanctions can be imposed under this statute when an attorney's actions, such as filing frivolous pleadings or pursuing claims without a reasonable basis, are deemed unreasonable and vexatious and multiplied the proceeding, as occurred in the instant case.

### III. ANALYSIS

The legal system finds itself in a brave new world, driven by rapid advancements in technology which are materially changing how attorneys practice law and litigate. A relatively recent development for our legal system is the availability of Artificial Intelligence[3], including some of its subsets such as "Machine Learning"[4], "Natural Language Processing"[5], and

---

[3] "AI is not a single piece of hardware or software, but rather, a constellation of technologies that gives a computer system the ability to solve problems and to perform tasks that would otherwise require human intelligence." NAT'L SEC. COMM'N ON A.I., FINAL REPORT 31 (2021), https://www.dwt.com/-/media/files/blogs/artificial-intelligence-law-advisor/2021/03/nscai-final-report--2021.pdf.

[4] "Machine learning (ML) is the process by which a machine learns to perform tasks and improve on the performance of those tasks. How machines go about "learning" and with what degree of autonomy, change, and accuracy is the complicated part. Specifically, learning, as applied to machines, refers to the mathematical means by which they identify, aggregate, and derive meaning from data." JAMES E. BAKER, LAURIE N. HOBART, MATTHEW MITTELSTEADT, AN INTRODUCTION TO ARTIFICIAL INTELLIGENCE FOR FEDERAL JUDGES 15 (Fed. Jud. Ctr. 2023), https://www.fjc.gov/content/375968/introduction-artificial-intelligence-federal-judges.

[5] Natural Language Processing is also a subset of AI which enables computers to read text or hear speech and analyze large volumes of data which can be useful in document analysis, eDiscovery, contract review and legal research. *See AI for Lawyers: What Is AI and How Can Law Firms Use It?*, CLIO, https://www.clio.com/resources/ai-for-lawyers/lawyer-ai/.

"Generative AI."[6]

In the Court's view, there is nothing inherently wrong with an attorney properly and competently utilizing AI or any of its subsets to practice law or litigate cases. However, the evolving technology has many glitches (including hallucinations) and does not always work properly or as expected. It is not always accurate and is prone to provide hallucinated cases, law, or facts. This is why close and careful attorney supervision, fact-checking, and citation-checking are absolute necessities when utilizing AI or any of its subsets. A basic prerequisite to the filing of any pleading, motion, response, reply, or paper in court is for the drafting and filing attorney(s) to carefully check every case citation, fact, and argument to make sure that they are correct and proper. Attorneys cannot delegate that role to AI, computers, robots, or any other form of technology. Just as a competent attorney would very carefully check the veracity and accuracy of all case citations in any pleading, motion, response, reply, or other paper prepared by a law clerk, intern, or other attorney before it is filed, the same holds true when attorneys utilize AI or any other form of technology.

As noted by United States District Judge Xavier Rodriguez of the United States District Court for the Western District of Texas, a recognized expert in the area of AI and the legal system, "[a]ttorneys using AI tools without checking on the accuracy of their output are responsible for the consequences of incorporating inaccurate information into their work product." Hon. Xavier

---

[6] "Generative AI is a specific subset of AI used to create new content based on training on existing data taken from massive data sources in response to a user's prompt, or to replicate a style used as input. The prompt and the new content may consist of text, images, audio or video." Maura Grossman, Paul Grimm, Daniel Brown, & Molly Xu, *The GPT Judge: Justice in a Generative AI World*, 23 Duke L. & Tech Rev. 1, 8 (2023) (available at https://scholarship.law.duke.edu/dltr/vol23/iss1/1/). One example of Generative AI is ChatGPT. *Id.* at 11.

Rodriguez, *Artificial Intelligence (AI) and the Practice of Law*, 24 SEDONA CONF. J. 783, 784 (2023). In discussing the rapid pace of AI developments, Judge Rodriguez goes on to state, "[w]hile these developments have been impressive, there is a need for education in the legal community to understand errors or 'hallucinations' that may occur in the output of the LLMs powering these platforms. Attorneys and courts need to be aware of both the benefits and limitations that these AI platforms present." *Id.* at 791. Unfortunately, not all attorneys have heeded Judge Rodriguez's sage advice. That includes Mr. Lord and Mr. Bello in this case.

In the instant case, we have a situation where pro hac vice counsel Mr. Lord utilized AI to draft a response to a motion but then failed to check on the accuracy of the citations contained in the response. This is error number one. Mr. Lord then forwarded the draft response to local counsel Mr. Bello who also did not verify the accuracy of the case citations. This is error number two. Mr. Bello then filed the Response with the hallucinated case citation and principle of law which it allegedly supported on the docket. This is error number three. The filed Response was signed by both Mr. Lord and Mr. Bello, placing both of them under the ambit of Federal Rule of Civil Procedure 11 and other applicable rules and law. The filing by an attorney of a pleading, motion, response, reply, or other paper in court without checking the accuracy of the case citations and the proposition the case supports, resulting in a fake case citation being presented to the Court, violates an attorney's legal and ethical duties and obligations. In light of this conduct, the Court deems that sanctions are appropriate against both counsel, and the Court must now consider what sanctions are appropriate to impose upon Mr. Lord and Mr. Bello.

To be clear, the Court finds that sanctions are appropriate under Rule 11(b) and 11(c) because both attorneys presented to the court a written response without conducting a reasonable

inquiry as specified and required by the Rule. They both violated Rule 11 in submitting a fake hallucinated case citation which allegedly supported a principle of law for which they were advocating. Further, sanctions are appropriate under the Court's inherent authority to manage its own affairs and achieve the orderly and expeditious disposition of cases. Here, counsel were at least reckless in their conduct, placing them under the ambit of the Court's inherent authority. Further, under 28 U.S.C. § 1927, both attorneys engaged in practices that unnecessarily increased the complexity of the litigation by filing a Response that was frivolous in part and contained misrepresentations. And finally, under our Local Rules, both counsel had an obligation to act competently, in accordance with applicable Florida Bar Rules, and not submit a Response containing false representations to the Court. Simply put, there are many bases in this case upon which to impose sanctions on counsel.

## IV. APPROPRIATE SANCTIONS

### A. Against the Parties

The Court shall impose sanctions upon Mr. Lord and Mr. Bello only, pursuant to Federal Rule of Civil Procedure 11(b)(2) and (c), 28 U.S.C. § 1927, our Local Rules, and the inherent authority of the Court. Although the Court could impose sanctions upon Defendants and Third Party Defendants themselves, the Court will not do so here. The Court finds that the imposition of sanctions on the parties themselves, that is, upon Defendants and Third Party Defendants, would not be appropriate under the particular facts of this case. The parties apparently had no role in drafting and filing the Response at issue. The fault here was clear attorney error, negligence, and recklessness which the Court will not impute to the parties at this juncture; however, if further similar issues arise, the Court will consider sanctions against the parties themselves as well as

offending counsel.

### B. Against the Attorneys

As to counsel, pro hac vice counsel Mr. Lord stated at the hearing that he accepts full responsibility for the inclusion of the hallucinated case in the filed Response. Mr. Lord stated that local counsel Mr. Bello took no part in the drafting of the Response.

As relevant to the determination of sanctions, the Court finds that Mr. Lord did not purposely attempt to mislead the Court. Nor did he intentionally submit a fake case citation. Mr. Lord has been practicing law for a very long time and, according to him, this was his first attempt at using AI to assist him in drafting a response. He was, however, clearly quite careless, negligent, and reckless, in drafting, submitting, signing and causing the filing of a Response with this Court which contained a hallucinated case citation for a proposition of law he advocated. The Court will also give him some credit for eventually acknowledging his error, apologizing to the Court and opposing counsel, and filing along with his local counsel Mr. Bello a notice withdrawing the case citation. However, in this regard, counsel did not move to withdraw the citation until approximately two weeks after Plaintiff's counsel pointed out the hallucinated case in Plaintiff's Reply. This was an unnecessarily slow response to a serious misrepresentation. Also, the Notice of Withdrawal did not state why the case was being withdrawn.

As to Mr. Bello, a member of this Bar, he is certainly less culpable here. He did not draft the Response, and he improvidently relied upon pro hac vice counsel to draft and verify the Response. However, local counsel in federal cases have serious obligations to their clients and the court. Taking on the role of local counsel in a federal case is serious business. In this regard, Mr. Bello filed a Motion to Appear *Pro Hac Vice*, Consent to Designation, and Request to

Electronically Receive Notices of Electronic Filing on behalf of Mr. Lord on August 6, 2024. [DE 349]. In that motion, Mr. Bello consented to "be designated as a member of the Bar of this Court with whom the Court and opposing counsel may readily communicate regarding the conduct of the case, upon whom filings shall be served, who shall be required to electronically file and serve all documents and things that may be filed and served electronically, and who shall be responsible for filing and serving documents in compliance with the CM/ECF Administrative Procedures." *Id.* at 2. That motion was later granted by the Court based upon Mr. Bello's consent and representations to this Court. [DE 350]. Thus, under our Local Rules, Mr. Bello, as local counsel, had numerous obligations to fulfill. He did not fully comply with his obligations by engaging in certain conduct such as filing the Response which contained the fake hallucinated case citation and not checking on the accuracy of the Response before he filed it. Mr. Bello also signed the filed Response along with Mr. Lord. This subjects Mr. Bello (as well as Mr. Lord) to the dictates of Rule 11 and other applicable rules and law.

However, the Court finds that Mr. Bello did not engage in purposeful bad faith misconduct. As local counsel, he was careless, negligent, and reckless in filing a response without ensuring the accuracy of the case citation and principle of law. He improvidently relied on Mr. Lord entirely for the accuracy of the Response which he filed with the Court. As Local Counsel, he had an obligation to ensure that the Response he was signing and filing was accurate and did not contain any misrepresentations such as the hallucinated case at issue. This should be a warning to attorneys who take on the role of local counsel in our federal courts. It is a serious role, and it must be taken seriously by counsel.

This Court is not the first to encounter counsel who submit hallucinated, fake case citations.

Some other courts have also unfortunately encountered similar situations where counsel submitted an AI-generated pleading, motion or other paper which contained hallucinated case citations. In a recent case in the Southern District of Florida, a pro se litigant utilized generative AI and failed to admit it, instead making additional misrepresentations to the court. *O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *6 (S.D. Fla. Jan. 10, 2025). The Court ultimately dismissed the case with prejudice as a sanction for such misconduct. *Id.* at *8; *see also Thomas v. Pangburn*, No. CV423-046, 2023 WL 9425765, at *7 (S.D. Ga. Oct. 6, 2023), *report and recommendation adopted,* No. 4:23-CV-46, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024), *appeal dismissed,* No. 24-10368-C, 2024 WL 5389428 (11th Cir. Oct. 21, 2024) (dismissing the case partially as a sanction due to the plaintiff's citation of sham cases).

In the instant case, Mr. Lord and Mr. Bello did not engage in such misconduct as specified in *O'Brien v. Flick*, and they did not attempt to minimize their behavior. They did not attempt to cover up their error or obfuscate the issue. They accepted responsibility and apologized. Had they not done so, and had they attempted to cover up their conduct, the Court would be imposing much more serious sanctions in this case.

In other similar cases, courts have imposed lesser sanctions other than dismissal, striking of pleadings, or entry of a default judgment. For example, in *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023), the attorneys were sanctioned for citing to fake cases in a brief which were hallucinated by ChatGPT. The court in that case issued sanctions which included a penalty of $5,000 to be paid into the court registry. *Id.* at 466. In *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 497 (D. Wyo. 2025), counsel submitted motions containing AI-generated fake cases, but honestly apologized for their mistake afterwards. The Court revoked pro hac vice counsel's

admission and fined each attorney in the amount of either $1,000 or $3,000 to be paid into the court registry. *Id.* at 499.

The Court does not view the revocation of Mr. Lord's pro hac vice status as appropriate at this time; however, if further similar issues arise, the Court will readdress this issue. Instead, the Court will impose an award of attorney's fees and costs against Mr. Lord and Mr. Bello, as well as fines against each counsel, and a CLE requirement, as further explained below.

## V. **CONCLUSION**

The Court takes the submission of a hallucinated, fake case citation supposedly supporting a principle of law very seriously. It is a serious misrepresentation to the Court and to opposing counsel. Judges in our nation's courts are quite busy and need to be able to rely upon competent counsel to submit well-reasoned pleadings, motions, responses, replies, and other papers containing accurate and supported arguments, facts, and case law. That did not occur here when the offending Response was filed.

This case should be a warning to lawyers that your pleadings, motions, responses, replies, and other papers filed with any Court must be first checked and then double-checked. There is no room in our court system for the submission of fake, hallucinated case citations, facts, or law. And it is entirely preventable by competent counsel who do their jobs properly and competently.

In sum, counsel who decide to enter a case to litigate must ensure that they carefully evaluate, elucidate, and advocate—not hallucinate.

The Court has carefully considered the applicable rules, law, and case law. As found earlier in this Order, sanctions are appropriate against both offending counsel. Having considered the totality of the facts here, the conduct of counsel, and the applicable law and rules, it is hereby

**ORDERED** as follows:

1. First, the Court will award Plaintiff all reasonable attorney's fees and costs incurred by its counsel for the time they spent in researching and replying to the Response [DE 371]. Both Mr. Lord and Mr. Bello shall be jointly and individually liable for the payment of this award. The parties' counsel shall promptly confer and attempt in good faith to determine and agree upon the reasonable attorney's fees and costs that were incurred by Plaintiff's counsel in this regard. The parties shall then file a Joint Notice on or before **May 27, 2025**, stating whether they have been able to agree upon the fees and costs to be paid, and if so, the specific amount agreed upon, and the payment schedule. The Court will then issue any further Order as deemed necessary. If the parties and their counsel cannot agree on a reasonable amount of fees and costs, or a payment schedule, they shall file separate notices on or before **May 28, 2025**, stating the nature of the dispute over the fees and costs (whether it involves the time incurred, hourly rate, or other issues) and their respective positions. The Court will promptly determine the amount of the attorney's fees and costs to be paid to Plaintiff by Mr. Lord and Mr. Bello and issue any appropriate further orders.

2. Second, Mr. Lord and Mr. Bello are both required to attend and complete, within 30 days from the date of this order, an approved CLE on Artificial Intelligence which has an ethics component addressing the ethical and legal obligations of counsel and parties regarding the use of Artificial Intelligence. Attendance can be in person or remote, such as attending and completing an online CLE presented by The Florida Bar or other recognized entity. They shall each file notices with the Court on or before **June 20, 2025**, stating whether and how they have completed the requisite CLE and complied with this Order.

3. The Court further ORDERS Mr. Lord to forthwith pay a fine in the amount of one thousand dollars ($1,000.00) to the Registry of the Clerk of this Court. The Court also further ORDERS Mr. Bello to forthwith pay a fine of five hundred dollars ($500.00) to the Registry of the Clerk of this Court. Counsel shall determine the logistics of the payments by contacting the Clerk of Court. Each counsel shall file a notice with the Court stating they have paid their respective fines.

4. Finally, failure to fully comply with this Order may result in further, more serious sanctions.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 20th day of May 2025.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge